Michael D. Singer (SBN 115301)
msinger@ckslaw.com
J. Jason Hill (SBN 179630)
jhill@ckslaw.com
**COHELAN KHOURY & SINGER**
605 "C" Street, Suite 200
San Diego, CA 92101-5305
Telephone:  (619) 595-3001
Facsimile:   (619) 595-3000

Counsel for Plaintiffs SHANNON NANGLE and TIMOTHY MYERS

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHANNON NANGLE and TIMOTHY MYERS, on behalf of herself and all others similarly situated,<br><br>             Plaintiff,<br><br>vs.<br><br>PENSKE LOGISTICS, LLC, a Delaware corporation, and DOES 1 through 100, inclusive,<br>             Defendants. | **Case No.  11-CV-00807 CAB (BLM)**<br><br>**MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Judge: The Hon. Cathy Ann Bencivengo<br>Dept:   Courtroom 4C<br>Date:   February 27, 2017<br>Time:  TBD<br><br>*[PER CHAMBERS RULES, NO ORAL ARGUMENT UNLESS SEPARATELY ORDERED BY THE COURT]*<br><br>Complaint Filed:  February 28, 2011<br>Trial date:           None set |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION AND SETTLEMENT SUMMARY ......................................... 1

II. PROCEDURAL AND LITIGATION HISTORY ..................................................... 2

III. DISCOVERY HISTORY ............................................................................................ 3

IV. SUMMARY OF PROPOSED SETTLEMENT TERMS ........................................ 4

    A. Gross Settlement Amount (GSA) ................................................................ 4

    B. Net Settlement Amount .................................................................................. 5

    C. Formula for Distribution to Participating Class Members .......................... 5

    D. Released Claims .............................................................................................. 6

    E. Settlement Administrator and Notice Packet to the Class .......................... 6

V. THE COURT SHOULD PRELIMINARILY APPROVE THE CLASS ACTION SETTLEMENT AND SET A FINAL FAIRNESS HEARING ............. 7

    A. Class Action Settlements are Subject to Court Review and Approval Under the Federal Rules of Civil Procedure ........................................................ 7

    B. Strength of Plaintiffs' Case and the Risk, Expense, Complexity and Likely Duration of Further Litigation ........................................................ 9

    C. The Extent of Discovery and Stage of the Proceedings Support the Settlement ...................................................................................................... 11

    D. Class Counsel are Experienced in Similar Litigation ............................... 11

    E. The Proposed Settlement Does Not Grant Preferential Treatment ............ 12

    F. The Proposed Settlement is a Reasonable Compromise of Claims .......... 12

VI. CLASS COUNSELS' ATTORNEYS' FEES REQUEST AND CLASS REPRESENTATIVE PAYMENTS ................................................................... 15

VII. CONCLUSION .......................................................................................................... 15

- ii -

Memorandum of Points & Authorities ISO Motion for an Order Granting Preliminary Approval of Class Action Settlement - Case No. 11-CV-00807 CAB (BLM)

# TABLE OF AUTHORITIES

**Page**

*Armstrong v. Bd. of Sch. Directors*
   616 F.2d 305 (7th Cir. 1980) .................................................................................. 8

*Berry v. School Dist. of City of Benton Harbor*
   184 F.R.D. 93 (W.D. Mich. 1998) .......................................................................... 8

*Boyd v. Bechtel Corp.*
   485 F.Supp. 610 (N.D.Cal. 1979) ......................................................................... 11

*Class Plaintiffs v. City of Seattle*
   955 F.2d 1268 (9th Cir. 1992) ................................................................................ 9

*Dunleavy v. Nadler*
   213 F.3d 454 (9th Cir.2000) ................................................................................... 7

*Ellis v. Naval Air Rework Facility*
   87 F.R.D. 15 (N.D.Cal. 1980) .............................................................................. 11

*Felzen v. Andreas*
   134 F.3d 873 (7th Cir. 1998) .................................................................................. 8

*Fisher Bros. v. Cambridge Lee Industries, Inc.*
   630 F.Supp. 482 (E.D.Pa. 1985) ........................................................................... 11

*Hanlon v. Chrysler Corp.*
   150 F.3d 1011 (9th Cir. 1988) ................................................................................ 9

*In re Mego Fin. Corp. Sec. Litig.*
   213 F. 3d 454 (9th Cir. 2000) ............................................................................... 14

*In re Mid-Atlantic Toyota Antitrust Litig.*
   564 F. Supp. 1379 (D. Md. 1983) .......................................................................... 8

*In re Omnivision Technologies, Inc.*
   2007 U.S. Dist LEXIS 95616 (N.D. Cal. 2007) .............................................. 11, 14

*Linney v. Cellular Alaska Partnership*
   151 F.3d 1234 (9th Cir. 1998) ..................................................................... 7, 14, 15

*Officers for Justice v. Civil Serv. Comm'n*
   688 F.2d 615 (9th Cir. 1982), cert. den. 459 U.S. 1217 (1983) ........................... 14

*Torrisi v. Tucson Elec. Power Co.*
   8 F.3d 1370 (9th Cir. 1993) .................................................................................... 9

*Van Bronkhorst v. Safeco Corp.*
   529 F.2d 943 (9th Cir. 1976) .................................................................................. 9

*Whitford v. First Nationwide Bank*
   147 F.R.D. 135 (W.D. Ky. 1992) ........................................................................... 8

## **STATUTES AND REGULATIONS**

**Page**

*California Business and Professions Code*
    § 17200, *et seq* ............................................................................................................ 6

*California Labor Code*
    § 203 ............................................................................................................................. 6
    § 226 ....................................................................................................................... 8, 13
    § 226.7 .................................................................................................................... 8, 13
    § 227.9 ........................................................................................................................... 2
    § 512 ............................................................................................................................. 6

*Federal Rules of Civil Procedure*
    Rule 23 ......................................................................................................................... 7
    Rule 23(e) ................................................................................................................. 7, 8
    Rule 30(b)(6) ................................................................................................................ 3

## **MISCELLANEOUS AUTHORITIES**

4 Herbert Newberg & Alba Conte, *Newberg on Class Actions,* vol. 4 (4th ed. 2002)
    § 11.22, et seq. ............................................................................................................. 8
    § 11.25 .......................................................................................................................... 8

Manual for Complex Litigation (Fourth) (2004)
    § 21.632 ........................................................................................................................ 8

- iv -

Memorandum of Points & Authorities ISO Motion for an Order Granting Preliminary Approval of Class Action Settlement - Case No. 11-CV-00807 CAB (BLM)

## I. INTRODUCTION AND SETTLEMENT SUMMARY

Plaintiffs Shannon Nangle and Tim Myers have reached a pre-certification settlement of claims similar to the related case of *Dilts v. Penske Logistics, LLC* arising from the employer's use of an automatic deduction for driver meal periods and meal period premiums. Plaintiffs seek preliminary approval of a non-reversionary settlement in the amount of $500,000.00 for unpaid but deducted work time and meal period premiums under the California Labor Code and Unfair Competition Law (UCL) and derivative claims for wage statement and waiting time penalties. There will be no claims process, and class members who do not exclude themselves will receive direct payment. Declaration of J. Jason Hill ("Hill Decl.") ¶7.

After deductions for requested attorney's fees of 25% ($125,000.00), costs of $15,000.00, class representative incentive awards of $10,000.00 for each class representative, and estimated settlement administration costs of $15,000.00, the net settlement amount totals $325,000.00, to be distributed to the estimated 587 class members based proportionately on the number of weeks worked during the class period.[1] Hill Decl. ¶8.

As discussed in detail below, Plaintiffs seek approval of the proposed settlement as fair, reasonable and adequate and ask the Court to set dates for providing notice of settlement, requests for exclusion or objection, a final approval and fee hearing date, along with a briefing schedule.

## II. PROCEDURAL AND LITIGATION HISTORY

This litigation has been pending now for six years and has periods of both active and inactive phases. On February 28, 2011, Plaintiff Nangle filed her Class Action complaint in San Diego Superior Court seeking damages for use of automatic deduction to wages that resulted in unpaid off-the-clock time and/or underpaid regular and

---

[1] Defendant is still confirming the exact number and total workweeks during the proposed Class Period, which is from February 28, 2007 to the date of preliminary approval. Hill Decl. ¶9.

overtime wages, knowing and intentional failure to provide accurate itemized employee wage statements, knowing and intentional failure to timely pay wages due upon separation from employment, and violations of the unfair competition law. Hill Decl. ¶10. At that time, no claims for meal period premiums was claimed based upon a rulings in the District Courts determining federal preemption (that were later subject to Ninth Circuit decision finding no preemption.) *Id*.

Defendant answered the Complaint on April 15, 2011, and thereafter, on April 18, 2011, Defendant filed Notice of Removal to the U.S. District Court for the Southern District of California. Doc. No. 1. Hill Decl. ¶11.

Plaintiff filed a Notice of Related Case on June 1, 2011 informing the Court and all parties that this action was related to a pending federal action: *Dilts, et al. v. Penske Logistics, LLC, et al.*, United States District Court, Southern District of California. Doc. No. 9. On June 6, 2011, defendant objected to Plaintiff's Notice of Related Cases disagreeing with Plaintiff that the *Nangle* was related to the *Dilts*. Doc. No. 10. Because the *Nangle* action challenged the same auto-deduct policy as *Dilts*, the Court overruled the objection, deemed the cases related, assigned the matter to the same District Judge and Magistrate Judge as *Dilts*, but the matters were not consolidated. Doc. No. 13. Hill Decl. ¶12.

On June 14, 2011, the cases were assigned to the same judge and magistrate judge but they were not consolidated. Efforts for resolution on June 30, 2011, during the Early Neutral Evaluation Conference ("ENE") were unsuccessful and the case proceeded to litigation and discovery. Doc. No. 17. Hill Decl. ¶13.

Shortly thereafter Defendant attempted to transfer venue by motion to the Central District in July 2011. Doc. No. 18. The Court denied the motion. Doc. No. 48. Defendant then filed a Motion for Judgment on the Pleadings based on an earlier settlement in *Green v. Penske Logistics, LLC,* a case that involved only a "us it or lose it" vacation policy in violation of California Labor Code §227.3. Doc. No. 21. Because the class release signed by Nangle in the *Green* settlement arose from a completely separate

factual predicate, the Court denied the motion. Doc. No. 48. Hill Decl. ¶14.

Plaintiff sought putative class contact information by motion to compel. Doc. No. 27. The motion was initially denied without prejudice due to Penske's then pending dismissal motion. Doc. No. 36. Ultimately, through agreement and privacy notice process by Simpluris, putative class contact information was obtained. Hill Decl. ¶15.

The case was transferred from Judge Sammartino to this Court on February 15, 2012, (along with *Dilts*). Doc. No. 43. On May 15, 2013, just before commencing expert discovery, the parties agreed to stay the action pending the appeal of a preemption summary judgment ruling in *Dilts*. Doc. Nos. 51, 52, 53. Hill Decl. ¶16.

The action remained stayed until June 2015, after the Ninth Circuit reversed and remanded the *Dilts* matter finding no federal preemption of California meal and rest period laws. Doc. No. 55. Hill Decl. ¶17.

On February 29, 2016, Plaintiff moved to Amend the Complaint so as to conform the pleading to law and proof to add a meal period claim under Labor Code §226.7 and to add another proposed Class Representative Plaintiff, Tim Myers. Doc. No. 65. Plaintiff also moved for class certification. Doc. No. 66. Hill Decl. ¶18.

On July 20, 2016, the Court granted the motion for leave to amend to file a First Amended Complaint and deemed the certification motion as withdrawn to be refiled consistent with the scheduling order, which required Plaintiffs to refile for certification on December 18, 2016. Doc. No. 76. Hill Decl. ¶19.

However, the parties finally agreed to mediate the matter with Mark Rudy, Esq. November 22, 2016, and reached a settlement in principle and Memorandum of Understanding. Doc. No. 86. The Court then set January 23, 2017 for the parties to file a motion for preliminary approval (or class certification). Doc. No. 87. Hill Decl. ¶20.

## III.   DISCOVERY HISTORY

Following initial disclosures, Plaintiffs engaged in significant written discovery. Plaintiff also took a Rule 30(b)(6) deposition of Penske regarding the automatic deduction policies for non-Whirlpool accounts in California. Hill Decl. ¶21.

On April 19, 2013, Plaintiff served Defendant with addition discovery, in the form of Special Interrogatories (Set Three), Request for Production (Set Two), Request for Admissions (Set One) as well as Deposition Notice Re: Dispatcher Duties and Responsibilities, Deposition Notice Re: Punch-time Database and Shift Counts (LMS), Deposition Notice Re: Policy Re: Relieving PCM's of "All Duty" and Deposition Notice Re: Driver Logs without Start/Stop Times. Hill Decl. ¶22.

Defendant served Plaintiff with Subpoena to Testify at a Deposition in A Civil Action; Notice of Deposition of Plaintiff's Expert Witness, Sean Chasworth; Notice of Deposition of Plaintiff, Shannon Nangle; Subpoena to Testify at a Deposition in a Civil Action; and Notice Of Deposition Of Tim Myers on April 5, 2016. Hill Decl. ¶23.

On April 11, 2016, Defendant took the Deposition of Expert Witness Sean Chasworth on behalf of Plaintiff in Pasadena, California. On the morning of April 12, 2016, Defendant took the Deposition of Shannon DePonceau (formerly Nangle) on April 12, 2016 in San Diego, California. Hill Decl. ¶24.

On the afternoon of April 12, 2016, Defendant took the Deposition of Timothy John Myers on April 12, 2016 in San Diego, California. Plaintiff served Defendant with additional discovery on August 30, 2016 in the form of Interrogatories (Set Four). Defendant responded to this discovery on October 3, 2016. Hill Decl. ¶25.

In order to gather substantive information from the class for use in formulating Plaintiffs' arguments supporting class certification and class-wide damages, on November 2, 2015, Plaintiff's counsel mailed a written survey to 530 putative class members, regarding the working conditions and work experiences of class members. Ultimately, 79 completed surveys were returned to and analyzed by Plaintiff's counsel after 3 mailings. The survey responses were submitted as evidence in support of Plaintiffs' initial Motion for Class Certification. Hill Decl. ¶26.

## IV. SUMMARY OF PROPOSED SETTLEMENT TERMS

**A.  Gross Settlement Amount (GSA).** The Parties have agreed (subject to and contingent upon approval of this Court), that the class claims be settled and

- 4 -

compromised for the GSA of $500,000.00, which sum includes (a) Participating Class Member Settlement shares; (b) attorney's fees of up to 25% ($125,000.00); (c) costs of up to $15,000.00; (d) class representative incentive awards of $10,000 each to Nangle and Myers; and (e) Settlement Administrator expenses to CPT Group, bid at $15,000.00. Hill Decl. ¶27, Exh. A – Settlement Agreement[2].

**B.   Net Settlement Amount**. After all Court-approved deductions, the remaining sum ("NSA") estimated at $325,000.00, will be distributed to all Participating Class Members based proportionately on the number of weeks they worked during the class period. The Settlement further provides that Class Members will receive their share of the NSA automatically without having to return a Claim Form. Hill Decl. ¶28. All unclaimed shares of the NSA by a Class Member will be redistributed proportionately among the Participating Class Members. No portion of the Settlement will revert to Defendants. Hill Decl. ¶29.

**C.   Formula for Distribution to Participating Class Members**. Each Class Member who does not request to be excluded from the Settlement will receive a proportionate share of the Net Settlement Amount based on the number of weeks worked during the Class Period, calculated by dividing the Net Settlement Amount by the aggregate number of weeks worked by Class Members multiplied by the number of weeks worked by a Participating Class Member during the Class Period. Hill Decl. ¶30.

With 587 potential Class Members, the average Participating Class Member share is estimated at $553.66. Hill Decl. ¶31. Obviously, class members who worked more years in the Class Period will receive greater compensation and class members who worked only small amounts of time will receive less. Any person who excludes themselves from the settlement returns for distribution to the other class members and any uncashed checks will be provided to California's unclaimed property fund. Hill

---

[2]The parties have reached final agreement to the Settlement Agreement. A fully-executed Settlement Agreement will be filed with the Court upon receipt of signatures from all Parties.

Decl. ¶32.

**D.     Released Claims**.

The Settlement will result in the following releases:

Participating Class Members: "Class Released Claims" means any and all actions, causes of action, grievances, obligations, costs, expenses, damages, losses, claims, liabilities, suits, debts, demands, and benefits (including attorneys' fees and costs actually incurred) arising out of or related to the following claims: (1) any alleged violations of Labor Code §§ 510, 515, 1194, for any claim of OTC work arising from any automatic (electronic or manual) meal period deduction process, including claims for any regular or overtime wages resulting from such processes; (2) any alleged violations of Labor Code §§ 226.7, 512 and/or IWC Wage Order 9-2001, §11 for any non-compliant meal period claims; (2) failure to pay all wages due at termination pursuant to Cal. Labor Code § 203 with respect to wages or meal period premiums arising from any OTC or meal period violation; (3) inaccurate wage statements in violation of Cal. Labor Code § 226 arising from any unpaid wages or meal period premiums as a result of any OTC claim or meal period violation; (4) violation of the California Unfair Competition Law, Cal. Business & Professions Code §17200, et. seq., with respect to claims unpaid wages or meal period premiums arising from alleged violations of Labor Code §§ 510, 515, 1194, 226.7, 512 and/or IWC Wage Order 9-2001, § 11; and (5) penalties, including civil penalty claims under the PAGA, and interest related to the claims for unpaid wages for OTC time, as well as meal period premiums during the Class Period. Hill Decl. ¶33.

Individual Plaintiffs Nangle and Myers release all claims against Penske, as set forth at length in Section IU of the Settlement Agreement. Hill Decl. ¶34.

**E.     Settlement Administrator and Notice Packet to the Class**. CPT Group, the Settlement Administrator selected by the Parties, will conduct a search of the National Change of Address database to update Class Member addresses, and will thereafter mail to each Class Member identified on the Class List, a Notice of Class

- 6 -

Action Settlement ("Notice") and Change of Address Form. (collectively "Notice Packet"). Hill Decl. ¶35; Exh. 1 - Notice; Exh. 2 - Change of Address Form.)

The Notice advises the Class of (1) their rights to participate in the Settlement; (2) the amount of their settlement share; (3) the amounts requested for attorney's fees, costs, class representative incentive awards, and administrator costs; (4) that they will receive a Settlement Payment, automatically, without a claim form as long as they did not request exclusion; (5) they should keep a current address on file with the administrator; (6) how to object to the settlement; (7) how to request exclusion from the settlement; and (8) the procedures and timing for doing each. Hill Decl. ¶36. The Notice also advises Class Members the date by which they must postmark a request for exclusion or objection, which the Settlement Agreement provides is 60 days from the initial mailing of the Notice Packet to object to the Settlement or to request exclusion. *Id*.

## V. THE COURT SHOULD PRELIMINARILY APPROVE THE CLASS ACTION SETTLEMENT AND SET A FINAL FAIRNESS HEARING

### A. Class Action Settlements are Subject to Court Review and Approval Under the Federal Rules of Civil Procedure

A class action may not be dismissed, compromised, or settled without the approval of the Court. FRCP Rule 23(e). The decision to approve or reject a proposed settlement is committed to the Court's sound discretion. *Dunleavy v. Nadler*, 213 F.3d 454, 458 (9th Cir.2000) (citing *Linney v. Cellular Alaska Partnership,* 151 F.3d 1234, 1238 (9th Cir. 1998)). Judicial proceedings under FRCP Rule 23 have led to a defined procedure and specific criteria for class action approval. The Rule 23(e) settlement approval procedure includes three distinct steps: (1) preliminary approval of the proposed Settlement; (2) dissemination of a notice of the settlement to all affected class members; and (3) a formal fairness hearing at which class members may be heard regarding the Settlement, and at which counsel may introduce evidence and present argument concerning the fairness, adequacy, and reasonableness of the Settlement.

1 *Whitford v. First Nationwide Bank*, 147 F.R.D. 135, 137 (W.D. Ky. 1992);

2       This procedure safeguards Class Members' due process rights and enables the Court to fulfill its role as the guardian of class interests. *See* Alba Conte & Herbert Newberg, *4 Newberg on Class Actions* (2002) ("*Newberg*"), §§ 11.22, *et seq*. By way of this motion, Plaintiffs request the Court take the first step in the Settlement process and preliminarily approve the proposed Settlement.

      The purpose of the Court's preliminary evaluation of the proposed Settlement is to determine whether it is within the "range of reasonableness," and thus whether notice to the Class and a formal fairness hearing are appropriate. *See Newberg* § 11.25. The *Manual for Complex Litigation* (Fourth) (2004) *("Manual")* characterizes the preliminary approval state as an "initial evaluation" of the fairness of the proposed settlement made by the Court on the basis of written submissions and informal presentation from the settlement parties. *Manual* § 21.632.

      At this stage, the Court is not making a final determination on whether the settlement is fair, reasonable, and adequate, as is ultimately required by FRCP Rule 23(e). Rather, the Court need only decide whether the settlement "appears to fall within the range of possible approval." *Armstrong v. Bd. of Sch. Directors*, 616 F.2d 305, 314 (7th Cir. 1980), overruled on other grounds by *Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998); *see also Berry v. School Dist. of City of Benton Harbor*, 184 F.R.D. 93, 97 (W.D. Mich. 1998) (the court first must determine "whether the proposed settlement is potentially approvable"); *In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1384 (D. Md. 1983) (likening preliminary approval to a finding that there is "probable cause" to submit the settlement to the class and to hold a full-scale final approval hearing); *Newberg* § 11.25.

      Courts must give "proper deference" to settlement agreements, because "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or

- 8 -

collusion between the negotiating parties, and the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1988) (quotations omitted.)

The Court's determination of whether a proposed settlement is fair, adequate, and reasonable is often said to require a balancing of several factors. These factors may include, among others: "the strength of plaintiff's case; the risk, expense, complexity, and the likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.' This list is not exclusive and different factors may predominate in different factual contexts." *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 13785 (9th Cir. 1993) (citation omitted.)

A discussion of these factors support the conclusion that the proposed Settlement is indeed "fair, adequate and reasonable." Further, the law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigors of formal litigation. *See Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1275 (9th Cir. 1992); *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976). Preliminary approval is thus appropriate and the Court should allow the notice of the proposed Settlement to be disseminated to the Class.

**B.   Strength of Plaintiffs' Case and the Risk, Expense, Complexity and Likely Duration of Further Litigation.**

Though cordial and professional, the settlement negotiations have been, at all times, adversarial and non-collusive in nature, with litigation lasting many years. Continued good faith, but occasionally contentious, negotiations were required to ultimately reach agreement. While Plaintiffs believe in the merits of their case, they also recognize the inherent risks and uncertainty of litigation and understand the benefit of providing a significant settlement sum now as opposed to risking (i) that the Court

- 9 -

1 ultimately denies certification altogether, given that the *Nangle*, unlike *Dilts* remains at
2 the pre-certification stage; and/or (ii) the possibility for an unfavorable result on the
3 merits and/or on an appeal, a process that can take several more years to litigate. Hill
4 Decl. ¶37.

5      Plaintiffs' claims involve complex and disputed legal issues and fact-specific
6 arguments which the Parties have litigated fiercely since inception of the action, and
7 similar issues in the related case. And, as the Court is aware, based on the evidence
8 presented in the Phase I proceedings in *Dilts* (including an expensive telephonic survey
9 that the Court excluded from evidence based on critical flaws) even if *Nangle* is
10 certified, the final evidence for recovery will be strongly challenged, and could result in
11 either decertification or worse, a failure of proof on the class claims altogether.  The
12 Court in *Dilts* ultimatedly decertified the auto-deduction subclass after the primary proof
13 of class wide impact – the Dr. O'Neil survey – was excluded.  And moving forward,
14 even on just use of actual records will be quite expensive for both parties, as there are
15 hundreds of thousands of paper driver logs and electronic records for the *Nangle* hourly
16 drivers.  Even with sampling, all of the records would need to be produced so that a
17 proper sample could be extracted, costing all parties many thousands of dollars, not to
18 mention expert statistical analyst costs. Plaintiffs firmly believe in the strength of their
19 claims, but Penske also has strong defenses to class liability and damage determinations,
20 some of which have bearing on potential decertification hearings. Hill Decl. ¶38.

21      These risks supported settlement in lieu further contentious litigation in one of
22 the busiest district courts in this Circuit. Further, given the relatively low wages for the
23 class members, the proposed recovery is meaningful for absent class members.
24 Plaintiffs' counsel does not anticipate many exclusions or objections based on
25 experience in other cases involving drivers. Indeed, on key marker should the matter
26 proceed to final approvable is the extent of, in this case, any exclusions, since otherwise
27 the class members will be guaranteed payment on a claim that might ultimately result in
28 no class recovery at all. Hill Decl. ¶39.

### C. The Extent of Discovery and Stage of the Proceedings Support the Settlement.

The proposed Settlement is the product of substantial effort by the Parties and the use of one of the most informed wage and hour mediators in California (Mr. Rudy). As shown by the litigation history, the Parties have thoroughly investigated and evaluated the factual strengths and weaknesses of this case and engaged in sufficient investigation and discovery reflected above in Section II, to support the Settlement. Hill Decl. ¶¶10-26, 40. This litigation, therefore, has reached the stage where the Parties certainly have a clear view of the strengths and weaknesses of their cases sufficient to support the Settlement. *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979).

### D. Class Counsel are Experienced in Similar Litigation.

Class Counsel, Cohelan, Khoury & Singer has had significant experience in litigating overtime, expense reimbursement, and rest/meal period cases, and other wage and hour class cases and have obtained certification in many such cases. Hill Decl. ¶53, Exh. B – Firm Resume.

Defendant's counsel, James H. Hanson, and Adam C. Smedstad of Scopelitis, Garvin, Light, Hanson & Feary, P.C. are also well experienced in wage and hour employment law and class actions. Hill Decl. ¶24.

Experienced counsel, operating at arms-length, have weighed the strengths of the case and examined all of the issues and risks of further litigation and endorse the proposed Settlement. The view of the attorneys actively conducting the litigation "is entitled to significant weight" in deciding whether to approve the settlement. (*Fisher Bros. v. Cambridge Lee Industries, Inc.* (E.D. Pa. 1985) 630 F.Supp. 482, 488; *Ellis v. Naval Air Rework Facility* (N.D. Cal. 1980) 87 F.R.D. 15, 18, affd. 661 F.2d 939 (9th Cir. 1981); "The recommendations of plaintiffs' counsel should be given a presumption of reasonableness" *In re Omnivision Technologies, Inc.*, (N.D. Cal. 2007), 559 F. Supp. 2d 1036, 1043, citing *Boyd v. Bechtel Corp., supra*, 485 F.Supp. 610, 622.)

Class Counsel having prosecuted numerous cases on behalf of employees are experienced and qualified to evaluate the Class claims and to evaluate settlement versus

a trial on a fully informed basis, and to evaluate the viability of the defenses. Hill Decl. ¶55. The opinion of counsel in support of the proposed Settlement is based on a realistic assessment of the strengths and weaknesses of their respective cases, extensive legal and factual research, an assessment of the risks of proceeding with the litigation through impending trial and, if a judgment were recovered, through appeal as compared to the certain value of a settlement at this time. Given the risks inherent in litigation and the defenses asserted, this Settlement is fair, adequate, and reasonable and in the best interests of the class, and should be preliminarily approved. Hill Decl. ¶56.

### E. The Proposed Settlement Does Not Grant Preferential Treatment.

No group or member of the proposed class is discriminated against under the terms of the proposed Settlement. All participating class members will receive a pro rata share of the net settlement based on their aggregate workweeks, and any fees, incentive awards, or costs will be approved by the Court. Hill Decl. ¶41.

### F. The Proposed Settlement is a Reasonable Compromise of Claims.

Based upon Plaintiffs' lengthy and comprehensive efforts to review, analyze and obtain records, as well as the additional needs to require production of records so they can be properly sampled, and the Defendant's use of newer electronic records, would still require huge expenditures in both hard costs and expert fees to examine and report on even sampled data. Hill Decl. ¶42. Based on client depositions, the responses to some 79 written surveys and informal telephonic interviews conducted with interested class members over the last 4-5 years, Plaintiffs estimate that potential violation rates for 30-minutes deducted off-the-clock without corresponding 30-minutes of off-duty time to be in the range of 1 to 2 times per workweek. Hill Decl. ¶43. Class members subject to a 30-minute auto-deduction may have still had break periods of 20-25 minutes, thus leaving their OTC unpaid time to be fairly fractional, or from 15 minutes to 5 minutes. Assuming each class member lost a total of 30-minutes what should have otherwise have been paid time each workweek, the exposure would be approximately $750,000 during the period when the auto-deduction was used. With average rates of pay at around

$20.00 per hour for drivers, and assuming 250 full-time employee equivalents over a 4 year period (until the policy ceased) is $500,000.00 [4 years x 50 workweeks per work year x 250 FTE's x $10.00 (30-minutes from $20.00 per hour) = $5,000,000.00] for the deduction claim.   Hill Decl. ¶44.

Similarly, based on pre-certification survey, interviews and Plaintiffs' deposition testimony, assuming 1.5 x per workweek that there existed a Labor Code §226.7 premium was owed under the same scenario yields a reasonable exposure range of between $1,000,000 to $2,000,000 in unpaid meal period premiums for unprovided or non-compliant meals. Thus, for the exposure period, OTC and §226.7 liability is in the range of $2,500,000.00. Hill Decl. ¶45. This does not include factors such as Penske complete discontinuation of all automatic deduction for all California accounts in the 2010 time range, and the payment of premiums when non-compliant meals were acknowledged by the employer (post-*Dilts* appeal). Hill Decl. ¶46.

Interest and waiting time penalties were not included in this assessment. The issue of whether interest and waiting time penalties are owed on denied meal period premiums is unsettled. Hill Decl. ¶47. Courts addressing the issue have determined that interest is not available. The Ninth Circuit Court of Appeals will decide whether waiting time penalties are appropriate in the pending case of *Finder v Leprino Foods Company*, Case No. 0:16-cv-16903.

To reach the $500,000.00 amount in the proposed settlement, Plaintiffs' estimates were subject to rational discounting in light of Defendants' that it provided meal periods and class members waived them if they were not taken, that some class members simply chose to continue driving (working) but then still nonetheless documented a meal period, and the fact that Penske has revamped its policies during the proposed Class Period. Hill Decl.¶48. A few surveys, some deposition testimony and class members interviews confirmed that some class members either did not see a problem, did not care about meal periods, or purposefully ate meals and took breaks as they wanted. These bits of evidence also weighed heavily on the assessment and valuation for settlement purposes.

Now, while it is true that many class members were very ill-informed about their rights, it was also clear that a large number of class members simply did not respond to a fairly easy to complete survey. Hill Decl. ¶49.

The proposed non-reversionary Settlement of $500,000.00 is estimated by plaintiffs to cover approximately over 50% of exposure for the time period before 2010, when Penske ceased use of any meal deduction in payroll. After refining policies during the pendency of the *Dilts* appeal, employee policy shifted such that non-compliance could be deemed by the trier of fact to be employee choice to record a meal even if a 30-minute break was not provided. A fair settlement such as this, which provides a certain payout that accounts for valid approximation of damages and offers a way for Penske to avoid costly further litigation and for Class Members to receive certain compensation with the risk of further extended litigation, appeals and the anticipated heavy expert analysis that would be required for trial. Hill Decl. ¶50.

In the face of these uncertainties, the Parties agreed to a compromise non-reversionary settlement to the 587 Class Members which will pay an average amount for each class member of $553.66. Hill Decl. ¶51. A settlement is not judged *solely* against what might have been recovered had plaintiff prevailed at trial, nor does the settlement have to provide 100% of the damages sought to be fair and reasonable. *Linney v. Cellular Alaska Partnership,* 151 F. 3d 1234, 1242 (9th Cir. 1998); *In re Mego Fin. Corp. Sec. Litig.,* 213 F. 3d 454, 459 (9th Cir. 2000). The adequacy of the amount recovered must be judged as "a yielding of absolutes. . . Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation . . ." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th  Cir. 1982) (citation omitted), "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not . . . render the settlement inadequate or unfair", *"Officers for Justice v. Civil Serv. Comm'n* (9th Cir. 1982) at 628; see also *In re Omnivision Technologies, Inc*. (N.D. Cal. 2007) 2007 U.S. Dist LEXIS

- 14 -

95616, at p. 21, noting that certainty of recovery in settlement of 6% of maximum potential recovery after reduction for attorney's fees was higher than median percentage for recoveries in shareholder class action settlements, averaging 2.2%-3% from 2002 through 2006.) Accordingly, the proposed Settlement is not to be judged against a speculative measure of what might have been achieved. *Linney v. Cellular Alaska Partnership, supra.*

In light of all the information provided above, the proposed Settlement reflects an excellent recovery for the Class and is well within the "ballpark" of reasonableness and should be granted preliminary approval. Hill Decl. ¶52.

## VI. CLASS COUNSELS' ATTORNEYS' FEES REQUEST AND CLASS REPRESENTATIVE PAYMENTS.

Plaintiffs will apply to the Court for an award of attorney's fees, costs, class representative payments, and administration costs in connection with a motion for final approval of the settlement following notice to the class.

## VII. CONCLUSION

Plaintiff respectfully submits that the proposed settlement is fair, adequate, and reasonable, and that it is in the best interests of the Plaintiffs and the Class. Under the applicable class action criteria and guidelines, Plaintiffs request that the Court preliminarily approve the proposed settlement and the Notice of Class Action Settlement, and set a date for the final fairness hearings.

Respectfully submitted,

Dated: January 23, 2017      **COHELAN KHOURY & SINGER**

By: _____s/ J. Jason Hill_____
       J. Jason Hill
       Attorney for Plaintiffs' SHANNON NANGLE
       and TIMOTHY MYERS