UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHANNON NANGLE and TIMOTHY MYERS, on behalf of themselves and all others similarly situated,<br><br>                      Plaintiffs,<br><br>v.<br><br>PENSKE LOGISTICS, LLC, a Delaware Corporation, and Does 1 through 100, inclusive,<br><br>                      Defendants. | Case No.: 3:11-CV-00807-CAB-(BLM)<br><br>**FINAL APPROVAL OF CLASS SETTLEMENT AND AWARDS OF ATTORNEYS' FEES, COSTS AND CLASS REPRESENTATIVE PAYMENTS**<br>**[Doc. No. 91]** |

      This matter is before the Court on Plaintiffs' unopposed motion for final approval of class action settlement and award of attorneys' fees, costs and class representative enhancement awards. [Doc. No. 91.] The Court held a hearing on this motion on May 22, 2017. As discussed below, the motion for final approval is granted, and the motion for attorneys' fees, costs and class representative enhancement awards is granted in part.

**I.    Background**

      Plaintiffs initiated this putative class action lawsuit in the Superior Court of San Diego County on February 28, 2011, alleging various wage and hour violations of

California's Labor Code and its Unfair Competition Law, CAL. BUS. & PROF. CODE § 17200. Defendants removed the case to this Court on April 18, 2011.

On November 30, 2016, after nearly six years in which the litigation was pending[1], the parties notified the Court that they had reached a settlement of the remaining certified claims. Plaintiffs filed an unopposed motion for preliminary approval of the class action settlement, which is memorialized in a written settlement agreement dated January 23, 2017. [Doc. Nos. 88, 90.]

The agreement provides for settlement of claims for unpaid overtime and non-compliant meal periods under the California Labor Code and Unfair Competition Law (UCL) and derivative claims for wage statement and waiting time penalties. It authorizes: (1) a class settlement in the amount of $500,000; (2) an average class member award of approximately $500 from the Net Settlement amount; (3) a class representative award of $10,000 per person; (4) $12,500 in class administrator fees; and (5) civil penalties of $7,500 to be paid to the Labor Workforce and Development Agency. Additionally, $125,000 in attorneys' fees and $13,292 in costs is being requested. [Doc. No. 90.]

On January 23, 2017, Plaintiffs filed an unopposed motion for preliminary approval of their settlement. [Doc. No. 88.] The Court granted the motion and preliminarily approved the settlement on February 06, 2017. [Doc. No. 89.] The preliminary approval order set a final approval hearing for May 22, 2017. The final approval hearing took place as scheduled. Counsel for both parties attended. No class members filed objections to the settlement, and no class members attended the hearing. However, six class members requested exclusion from the settlement.

//
//
//

---

[1] The litigation was stayed for two years while the related *Dilts v. Penske* was on appeal regarding the defense of preemption.

## II. Final Approval of Settlement

### A. Certification of the Settlement Class

The settlement here envisions certification of a class of "all persons employed by Penske in California as hourly paid drivers for all delivery accounts, excluding any employees assigned to the California Whirlpool Account, at any time during the period from February 27, 2007 through the date of an Order granting preliminary approval of the Settlement or 90-days from the date of November 22, 2016, whichever is sooner." [Doc. No. 90 at 4.] As a threshold matter, the Court must "ascertain whether the proposed settlement class satisfies the requirements of Rule 23(a) of the Federal Rules of Civil Procedure applicable to all class actions, namely: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation." *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1019 (9th Cir. 1998). Additionally, the Court must determine whether class counsel is adequate and whether "the action is maintainable under Rule 23(b)(1), (2), or (3)." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000) (quoting *Amchen Prod. v. Windsor*, 521 U.S. 591, 614 (1997)).

#### 1. Numerosity

This requirement is satisfied if the class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "A class greater than forty members often satisfies this requirement. . . ." *Waller v. Hewlett-Packard Co.,* 295 F.R.D. 472, 482 (S.D. Cal. 2013) (citing *Californians for Disability Rights, Inc. v. Cal. Dep't of Transp.*, 249 F.R.D. 334, 346 (N.D. Cal. 2008)). Here, notice packets were mailed to 641 potential class members. Joinder of all these potential plaintiffs would be impracticable. Accordingly, this requirement has been met.

#### 2. Commonality

This requirement is satisfied if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "To satisfy this commonality requirement, plaintiffs need only point to a single issue common to the class." *Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1121 (E.D. Cal. 2009). Here, the commonality requirement is

satisfied because all of the class claims concern whether Defendant violated California Labor Code and the UCL by failing to pay overtime, incorrectly deducting off-the-clock work, failing to provide compliant meal periods, and other derivative claims for wage statement and waiting time penalties

### 3. Typicality

This requirement is satisfied if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir. 1992) (internal quotations and citation omitted). Here, the typicality requirement is satisfied because the claims of named Plaintiffs and the class are the same. The wrongful conduct alleged in the complaint is not unique to the class representatives, and the damages to the class members, if any, are similar insofar as they relate to unpaid wages and Labor Code violations.

### 4. Adequacy of Class Representative

The final Rule 23(a) requirement is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The requires the Court address two questions: "(a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 462. Here, this requirement is satisfied because there is no obvious conflict between Ms. Nangle and Mr. Myers' interests and those of the class members.

### 5. Adequacy of Class Counsel

A court certifying a class must consider: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel

will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). The Court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." *Id.* at 23(g)(1)(B). Ultimately, when only one applicant seeks appointment as class counsel, the court must determine that "[c]lass counsel . . . fairly and adequately represent the interests of the class." *Id* at 23(g)(4). Here, Class Counsel has provided evidence of his firm's experience litigating overtime and rest/meal period cases, along with other wage and hour class cases, and there is nothing in the record to suggest that counsel is not able to fairly and adequately represent this Class. Accordingly, the Court finds this element satisfied for the purposes of certification of the settlement class.

### 6. Predominance and Superiority

"In addition to meeting the conditions imposed by Rule 23(a), the parties seeking class certification must show that the action is maintainable under Fed. R. Civ. P. 23(b)(1), (2) or (3)." *Hanlon*, 150 F.3d at 1022. "Rule 23 (b)(3) permits a party to maintain a class action if . . . the court finds that questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. *Connecticut Ret. Plans & Trust Funds v. Amgen Inc.,* 660 F.3d 1170, 1173 (9th Cir. 2011), *aff'd*, 133 S. Ct. 1184 (2013) (citing Fed. R. Civ. P. 23(b)(3)). The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Hanlon*, 150 F.3d at 1022-23 (quoting *Amchen Prods, Inc.*, 521 U.S. at 623). It requires an examination into whether there are "legal or factual questions that qualify each class member's case as a genuine controversy." *Id.*

Here, all of the class members were allegedly subject to Defendants purported illegal wage deductions and wage forfeitures. The legal and factual questions common to each class member's claim predominate over any questions affecting individual class members, and a class action is superior to other methods for adjudicating this controversy. Accordingly, the Court finds that the predominance and superiority inquiries have been satisfied.

5

3:11-CV-00807-CAB-(BLM)

In light of the foregoing, the Court conditionally certifies the class for the purposes of settlement.

**B. Legal Standard for Final Approval of Class Settlement**

Federal Rule of Civil Procedure 23(3) provides that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. Pro. 23(e). "Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon,* 150 F.3d at 1025. The Rule also "requires the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." *Id.* at 1026. In making this determination the Court is required to "evaluate the fairness of a settlement as a whole, rather than assessing its individual components." *Lane v. Facebook, Inc.*, 696 F.3d 811, 818-19 (9th Cir. 2012). Because a "settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon,* 150 F.3d at 1027.

In assessing a settlement proposal the district court is required to balance a number of factors, namely:

> the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Id.* at 1026.

**C. Analysis**

**1. Adequacy of Notice**

The Court approved notice of this class action and proposed settlement in the Preliminary Approval Order. The claims administrator distributed the Notice to 641 class members. The Notice advised the Class of the terms of the Settlement, of their rights (1) to participate and to receive their share of the Settlement automatically, without submission

6

of a claim form; (2) to object to the Settlement and to appear at the Final Approval Hearing, (3) to request exclusion from the Settlement; (4) the manner and timing for doing any of these acts; and (5) the date and time set for the final approval hearing. The Notice packet also included the class member's individualized information such as the number of workweeks worked during the Class Period, and the estimated amount of their Settlement Payment. Adequate periods of time were provided for each of these procedures. No class members objected to the settlement or the adequacy of the Notice, and only six class members requested exclusion from the class. Accordingly, the Court finds that the class received adequate notice.

### 2. Strength of Plaintiffs' Case; Risk of Further Litigation; and Risk of Maintaining Class Action Status

As a result of the preferable nature of Settlement over the uncertainties, expense and length of litigation "when assessing the strength of plaintiff's case, the court does not reach any ultimate conclusions regarding the contested issues of fact and the law that underlie the merits of this litigation." *Four in One Co. v. S.K. Foods, L.P.,* No. 2:08-CV-3017 KJM EFB, 2014 WL 4078238, at *7 (E.D. Cal. Aug. 14, 2014) (internal quotations omitted). Similarly, "a proposed settlement is not to be judged against a speculative measure of what might have been awarded in a judgment in favor of the class." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004).

Here, the Settlement has been reached six years after this litigation began, including a two year litigation stay, and involve disputed legal issues. The inherent risk of continued litigation is known to all involved in this and the related case *Dilts, et al. v. Penske Logistics, LLC, et al,* Case No. 3:08-CV-00318-CAB-(BLM). Additionally, since settlement has been reached at the precertification stage, there is a risk that this Court will deny class certification altogether. Further, proceeding with the litigation presents a very real risk of an unfavorable decision on the merits and/or on resulting appeals. While Plaintiffs believe in the merits of their case, Defendants have strong defenses to class

liability and damages determinations, and there is no guarantee that Plaintiffs will prevail. The Court finds these risks weigh in favor of settlement.

### 3. The Amount Offered in Settlement

"Basic to [the process of deciding whether a proposed settlement is fair, reasonable and adequate] * * * is the need to compare the terms of the compromise with the likely rewards of litigation." *In re TD Ameritrade Accountholder Litig.*, 226 F.R.D. 418, 422 (N.D. Cal. 2009) (quoting *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry Inc. v. Anderson*, 390 U.S. 414, 424-25, (1968)). However, "[t]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, meant that the proposed settlement is grossly inadequate and should be disapproved." *Linney v. Cellular Alaska P'ship,* 151 F.3d 1234, 1242 (9th Cir. 1998) (citation omitted).

Here, the proposed non-reversionary Settlement of $500,000 is estimated to cover approximately 50 percent of the exposure for the time period before 2010, when Penske ceased use of any meal deduction in payroll[2]. In support of the settlement amount, Plaintiffs note that Penske revamped its policies during the proposed Class Period. Further, Plaintiffs' assert "[a] few surveys, some deposition testimony and class members interviews confirmed that some class members either did not see a problem, did not care about meal periods, or purposefully ate meals and took breaks as they wanted. . . .weighed heavily on the assessment and valuation for settlement purposes." [Doc. No. 91-1 at 15:

---

[2] Plaintiffs' estimate total liability in the range of 2,500,000 for the exposure period. Plaintiffs' calculations regarding the auto deduction calculations assume that each class member lost a total of 30-minutes what should have otherwise been paid each workweek, creating exposure of approximately $750,000 during the period the auto-deduction was used. With average rates of pay at around $20.00 an hour for drivers, and assuming 250 full-time employee equivalents over a four year period until the policy ceases is $500,000.00 (4 years x 50 work weeks per year x 250 FTEs x $10.00 (half of hourly rate of $20.00) = $500,000.00). For the Labor Code §226.7 liability Plaintiffs assumed the premium was owed 1.5 x per workweek resulting in a reasonable exposure range between $1,000,000 to $2,000,000 for unpaid meal period premiums related to unprovided or non-complaint meals.
Plaintiffs' estimates were subject to rational discounting to take into account Defendants' claims and defenses but does not include factors such as the complete discontinuation of the automatic deduction policy in 2010.

13-16.] Under the Settlement each of 638 participating Class Members will receive, on average, $500.33. In light of the risks associated with continuing this litigation, the Court finds that a payout in this amount appears reasonable and weighs in favor of approval of the settlement.

### 4. Extent of Discovery

The Court's assessment of this factor focuses on whether the "parties have sufficient information to make an informed decision about settlement." *In re Mego Fin. Corp. Securities Litig.*, 213 F.3d at 459 (quoting *Linney*, 151 F.3d at 1239). Here, the Settlement has been negotiated after sufficient discovery has occurred. The parties have had ample time to gain sufficient knowledge regarding the relevant facts, law, and strengths and weaknesses of their claims and defenses to make an informed decision about settlement. Consequently, the Court finds this factor weighs in favor of approval of the settlement.

### 5. Experience of Counsel

"The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *In re Omnivision Technologies, Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) (citing *Boyd v. Bechtel Corp.,* 485 F. Supp. 610, 622 (N.D. Cal. 1979)). Here, Class Counsel has provided a declaration detailing their experience in litigating overtime, expense reimbursement, rest/meal period cases, and other wage and hour class cases. Class Counsel declares that his support of the Settlement is based on a realistic assessment of the strengths and weaknesses of the case, extensive legal and factual research, an assessment of the risks of proceeding with the litigation compared to the certain value of settlement at this time. In light of the foregoing, and according the appropriate weight to the judgment of counsel, the Court finds this factor weighs in favor of the settlement.

### 6. Reaction of Class Members

"It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement are favorable to the class members." *Nat'l Rural Telecomm. Coop., Inc.,* 221 F.R.D. at 29. Here, only six class members have opted out of the class and no objections to the settlement

have been received. *Id.* (the absence of a single objection "is compelling evidence that the Proposed Settlement is fair, just, reasonable, and adequate.") Accordingly, the Court finds this weighs in favor of settlement.

### 7. Other Factors

The Court also considers two additional factors: the process by which the settlement was reached and the involvement of the named plaintiffs in the process, in looking at the fairness of the Settlement. *See Young v. Polo Retail, LLC,* No. C-02-4546 VRW, 2007 WL 951821, *3 (N.D. Cal. Mar. 28, 2007) (adding factors "(9) the procedure by which the settlements were arrived at, see MANUAL FOR COMPLEX LITITGATION (FOURTH) § 21.6 (2004), and (10) the role taken by the plaintiff in that process.") Here, the parties reached agreement after extensive arms-length negotiations, culminating in a day long mediation before a neutral third party. Further, there is no evidence of preferential treatment for certain class members, because final approval is not contingent upon the Court's determination as to class representative incentive awards. Accordingly, the Court finds these factors weigh in favor of settlement.

### 8. Balancing of the Factors

"Ultimately, the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations and rough justice." *Officers for Justice v. Civil Service Comm'n of City and Cnty. of S.F.,* 688 F.2d 615, 625 (9th Cir. 1982) (citation omitted). "[It must not be overlooked that voluntary conciliation and settlement are the preferred means of dispute resolution. This is especially true in complex class action litigation." *Id.* Having considered the relevant factors, the Court finds they all weigh heavily in favor of settlement. As a consequence, the Court finds the settlement fundamentally fair, adequate and reasonable.

### III. Attorneys' Fees

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). However, "courts have an independent obligation to ensure that the award, like the

10

3:11-CV-00807-CAB-(BLM)

settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011). That Defendants agreed in the settlement not to oppose counsel's request for $125,000 "does not detract from the need carefully to scrutinize the fee award." *Staton v. Boeing Co.,* 327 F.3d 938, 964 (9th Cir. 2003).

In a diversity action under CAFA, federal courts apply state law when determining both the right to fees and the method of calculating them. *See Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1047 (9th Cir. 2002); *Mangold v. Cal. Pub. Utilities Comm'n,* 67 F.3d 1470, 1478 (9th Cir. 1995) ("Existing Ninth Circuit precedent has applied state law in determining not only the right to fees, but also in the method of calculating fees."). Following the California Supreme Court's decision, in *Laffitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480 (2016), courts may either use the lodestar approach or "may determine the amount of reasonable fee by choosing an appropriate percentage of the fund created." *Laffitte,* 1 Cal. 5th at 503-06. In discerning an appropriate percentage award in a common fund case, the California Supreme Court suggested considering the risks and potential value of the litigation, the contingency, novelty, and difficulty of the litigation, the skills shown by counsel, and a lodestar cross-check. *Id.* at 495, 503-06. Although recognizing the Ninth Circuit's 25 percent benchmark in common fund cases, it did not adopt this touchstone.[3] *Id.*

---

[3] When employing their discretion and utilizing the percentage-of-recovery method, federal "courts typically calculate 25% of the [common settlement] fund as the 'benchmark' for a reasonable fee award." *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d at 942. In assessing the reasonableness of the award in common fund percentage award cases, the Ninth Circuit has provided a non-exhaustive list of factors to be used, including "the extent to which class counsel achieved exceptional results for the class, whether the case was risky for class counsel, whether counsel's performance generated benefits beyond the cash settlement fund, the market rate for the particular field of law (in some circumstances), the burdens class counsel experienced while litigating the case (e.g. cost, duration, foregoing other work), and whether the case was handled on a contingency basis." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954-55 (9th Cir. 2015).

1       Here, Class Counsel submits that awarding $125,000, or 25 percent of the common fund, is fair and reasonable in light of the benefit that has been conferred on the Class, the substantial hours and efforts expended "resulting in considerable, negative lodestar multiplier," the litigation risks and complexity of the case, the contingent nature of the fee, the experience of counsel, and the fees commonly awarded in cases of this type. Class Counsel argues that because the requested 25 percent award is less than the lodestar it is therefore reasonable.

      The Court acknowledges that some factors support the fees request. For example, as the Court previously acknowledged the settlement amount of $500,000 confers substantial benefits upon the Settlement Class, particularly in light of the risks associated with continuing this litigation and weighs in favor of the fee amount. *See Hensley v. Eckerhart,* 461 U.S. 424, 436 (1983) (holding that "the most critical factor is the degree of success obtained"). Additionally, Class Counsel assumed the risk of taking this case on a contingency fee basis. *See Spann v. J.C. Penney Corp.,* 211 F. Supp. 3d 1244, 1264 (C.D. Cal. 2016) ("Courts consistently recognize that the risk of non-payment or reimbursement of expenses is a factor in determining the appropriateness of counsel's fee award.") (internal quotation marks and citation omitted.) Furthermore, the experience of Class Counsel in litigating class actions of this type supports the request. Moreover, the reaction of the Class to the settlement has been positive, with only six class members requesting exclusion, which supports the fee application. However, the claims asserted here are very similar to claims simultaneously litigated by Class Counsel in the related *Dilts* matter. The complexity and the novelty of the legal issues was addressed in Class Counsel's award in the *Dilts* case and will not be given duplicative value in this follow-on litigation. *See Hensley,* 461 U.S. at 434 (excessive, redundant, and unnecessary hours should be excluded). *In re Heritage Bond Litig.*, 2005 WL 1594403, at *20 (C.D. Cal. June 10, 2005) ("the novelty, difficulty and complexity of the issues involved are significant factors in determining a fee award).

In support of their fee request, Class Counsel has submitted a lodestar calculation. Class Counsel declares that they have worked over 680 hours on the case, and that the calculated lodestar fee on these hours is $376,300.50. Plaintiffs calculate the lodestar with the following hourly rates for attorneys from the law firm Cohelan Khoury & Singer: $750 for Michael Singer, $550 for J. Jason Hill, $200 for paralegal Amber Worden and $170 for paralegal Matthew Atlas. [Doc. No. 91-2 at 14.] In support, declarations and other evidence are offered to demonstrate the reasonableness of these rates compared to the prevailing market rates in the San Diego community for attorneys of their experience and ability. *See PLCM Group v. Drexler*, 22 Cal. 4th 1084, 1095 (2000) (a reasonable hourly rate is the prevailing rate charged by attorneys of similar skill and experience in the relevant community). Moreover, Class Counsel assert they are requesting an amount that is less than the lodestar calculation, resulting in a multiplier of -3.01.

Although the court need not "closely scrutinize each claimed attorney-hour" when conducting the loadstar cross check some review is required. *Laffitte*, 1 Cal. 5th at 505. Here, while the Court is satisfied that the rates charged by Class Counsel are reasonable in this jurisdiction for this type of litigation, it takes issue with the 680.65 hours counsel asserts they have worked on this case. As evidence of the reasonableness of the hours and rates Class Counsel provides a declaration providing vague and general descriptions of the work allegedly performed. *See generally, Chalmers v. City of L.A.*, 796 F.2d 1205, 1210 (9th Cir. 1986) ("[C]ounsel bears the burden of submitting detailed time records justifying the hours claimed to have been expended"). The motion and declaration point to the motion practice engaged in by the parties, including the class certification motion. But, the class certification motion that took a purported 113.2 hours of work, includes hours worked on a motion that was never refiled after it was withdrawn as a result of Class Counsel's lead plaintiff substitution. Further, the Court finds 84.4 hours billed for "Settlement" and 63.0 hours billed for "Final Fairness Review and Fee Motion to be inflated, especially in light of the fact that in the related *Dilts* case, Messrs. Singer and Hill billed a total of 59.0 hours

for all work related to the mediation, settlement of claims and subsequent filings.[4] Without more evidence to support the number of hours worked by counsel, the Court finds the lodestar calculation unreliable and of little help in confirming if the submission is reasonable.

In light of the foregoing, the Court finds an award of 15 percent of common fund is more reasonable. *See Spann,* 211 F. Supp. 3d at 1263 ("As always, when determining attorneys' fees, the district court [is] guided by the fundamental principle that fee awards out of common funds be reasonable under the circumstances.") (quoting *Glass v. UBS Fin. Servs., Inc.,* 2007 WL 221862, at *14 (N.D. Cal. 2007) *aff'd,* 331 Fed. Appx. 452 (9th Cir. 2009)). Accordingly, the Court awards Class Counsel attorneys' fees in the amount of $75,000.

**IV. Costs**

Attorneys are entitled to recover "those out-of-pocket expenses that would normally be charged to a fee paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994). Plaintiffs provide evidence that they have incurred $13,292.07 in costs over the course of this litigation. The Court has reviewed the request and finds them to be reasonable. Accordingly, the Court awards $13,292.07 in fees.

**V. Class Representative Payments.**

In the Settlement papers, Plaintiffs ask for incentive awards of $10,000, to each of the two named plaintiffs. Although "incentive awards are fairly typical in class action cases," they are discretionary. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009). "Generally, when a person joins in bringing an action as a class action he has disclaimed any right to a preferred position in the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 976 (9th Cir. 2003) (internal ellipses, quotations, and citation omitted). The purpose of incentive awards, therefore, is "to compensate class representatives for work

---

[4] *See* related case 3:08-cv-00318-CAB-BLM CM/ECF docket entry number 376-2 at 16-28.

done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958-59. However, "district courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives." *Radcliffe v. Experian Info. Solutions Inc.*, 715 F.3d 1157, 1164 (9th Cir. 2013).

In preliminarily approving the Class Settlement, the Court cautioned Plaintiffs that it considered the proposed class representative award of $10,000 to be excessive. Nothing has convinced the undersigned that such an amount is warranted, especially considering the average amount each class member will receive and that Mr. Myers only joined this litigation in July 2016. To award a class representative over twenty times more than what the average class member will receive, or two percent of the $500,000 common fund, is excessive. *See Ko v. Natura Pet Prods., Inc.,* No. C 09-02619, 2017 WL 2289342, at *15 (N.D. Cal. Sept. 10, 2012) (holding that an incentive award of $20,000, compromising one percent of the approximately $2 million common fund was "excessive under the circumstances" and reducing the incentive award to $5,000). Accordingly, the Court reduces the discretionary incentive awards to $2,000 per class representative.

### VI. Payment to the California Labor and Workforce Development Agency

The parties have agreed that $10,000 from the settlement will be used for payment of civil penalties provided for in the Private Attorney General Act of 2004. $7,500 will be paid to the California Labor & Workforce Development Agency and $2,500 will be paid to the Class. The Court finds this reasonable and approves payment.

### VII. Settlement Administration Cost

Finally, Class Counsel seeks payment of $15,000 to the Claims Administrator. The Court has reviewed the declaration detailing the work performed by CPT Group, Inc., and finds that paying this amount in administrative costs reasonable.

//

**VIII. Conclusion**

In light of the foregoing, it is hereby **ORDERED** as follows:

1. The Court **GRANTS** final approval of the proposed settlement;
2. The Court **GRANTS IN PART** Plaintiffs' motion for attorneys' fees, costs and class representative payments [Doc. No. 376];
3. The Court **GRANTS** Class Counsel $75,000 in attorneys' fees and $13,292.07 in costs from the common fund;
4. The Court **GRANTS** class representative enhancement awards of $2,000 each to Plaintiffs Nangle and Myers to be paid from the common fund;
5. The Court **GRANTS** $7,500 to be paid to the California Labor and Workforce Development Agency from the common fund as penalties;
6. The Court **GRANTS** $15,000 in settlement administration costs to be paid from the common fund to CPT Group, Inc.;
7. The Class members who asked to opt out of the settlement are excluded from the class;
8. The Court retains continuing jurisdiction over this settlement solely for the purposes of enforcing the agreement, addressing settlement administration matters, and addressing such post-judgment matters as may be appropriate under Court rules and applicable law;
9. Judgment is hereby entered on the terms set forth above. The Clerk of the Court shall close this case.

It is **SO ORDERED**.

Dated: June 16, 2017

Hon. Cathy Ann Bencivengo
United States District Judge